WARNER, J.
Petitioner seeks the great writ of habeas corpus to challenge his continued detention for life based upon his 1986 conviction for trafficking in cocaine. Although petitioner has filed multiple other pleadings to challenge his sentence, all of which have been denied, we conclude that this is one of those rare cases where a manifest injustice has occurred, which must be remedied by a resentencing of the petitioner. “[W]here ... the court finds that a manifest injustice has occurred, it is the responsibility of that court to correct the injustice if it can.” Adams v. State, 957 So.2d 1183, 1186 (Fla. 3d DCA 2006); see also Jamason v. State, 447 So.2d 892, 895 (Fla. 4th DCA 1983) (quoting Anglin v. Mayo, 88 So.2d 918, 919 (Fla.1956)) (“If it appears to a court of competent jurisdiction that a man is being illegally restrained of his liberty, it is the responsibility of the court to brush aside formal technicalities and issue such appropriate orders as will do justice.”).
In 1985, Prince was found guilty of trafficking in cocaine of an amount more than 28 grams but less than 200 grams. The crime was a first degree felony carrying a minimum mandatory term of imprisonment of three years and a maximum term of 30 years, as well as a $50,000 fine. See §§ 893.135(l)(b)l. & 775.082(3)(b), Fla. Stat. (1985). His scoresheet showed a recommended guidelines sentence of 17-22 years in prison. The state, however, requested that the trial court habitualize the defendant based upon his prior record, which was extensive. Prince had multiple prior felony convictions, including burglary of a dwelling, burglary of an unoccupied structure or conveyance, dealing in stolen property, grand theft, escape, and the current charge of trafficking. Most of the previous offenses were second degree felonies, and the state argued at sentencing that his crimes were increasing in seriousness because the trafficking charge was a first degree felony. As well, the state argued that he continually committed crimes almost immediately after being released from his many prison terms.
The court declared Prince a habitual offender. The state then argued that the sentence for a first degree felony, based *770 upon the habitualization, was mandatory life with no possibility for parole. Although defense counsel did not agree with the state, the court determined that there was no other sentence than life in prison which could be imposed.
Defense counsel argued that as to the specific trafficking charge, Prince was merely a minor participant in the drug offense. The co-defendant who directed the entire operation received only five years in prison, and he too had a prior record. Prince testified at the sentencing hearing, but the court stood fast to its decision to sentence him as a habitual offender. The court then said:
Whatever you say, whatever you display, you cannot change the sentence that I feel I am required, by law, to impose.
(emphasis added). The court then sentenced him to life in prison. The sentencing order contained a recitation of his prior crimes, including a finding of increased seriousness of the crimes and a finding of temporal proximity of prison releases to the commission of new offenses.
Prince appealed his conviction and sentence. While his appeal was pending, the supreme court decided Whitehead v. State, 498 So.2d 863 (Fla.1986). In Whitehead, the court held that the habitual offender statute could not operate as an alternative to the sentencing guidelines. Habitual offender status was not an adequate reason to depart from the recommended sentencing guidelines. Reversal of the sentence based upon Whitehead was argued in the initial brief. Nevertheless, this court affirmed his conviction without written opinion. We surmise this court determined that the trial court’s order of habitualization otherwise provided a valid basis for upward departure because it contained the findings of increased seriousness and temporal proximity to prison release. See Barfield v. State, 594 So.2d 259, 261 (Fla.1992).
Since his conviction and sentence became final, Prince has filed a litany of motions for postconviction relief, motions to correct an illegal sentence, and various writs seeking to overturn the life sentence. In those filings, he raised the issue that the trial court erroneously believed that a life sentence was mandatory. As noted above, the court was under the belief that a life sentence was the only sentence permitted once the court declared Prince a habitual offender. This was error, as the supreme court later explained. State v. Brown, 530 So.2d 51, 53 (Fla.1988), held that a life sentence was permissive and not mandatory for a habitual offender, based upon the statute in effect at the time of petitioner’s sentencing: section 775.084(4)(a), Florida Statutes (1985). Specifically, the court held that the habitual offender statute “must be read only as authorizing a permissive maximum penalty of life in prison.... [W]hen a felony offender is properly habitualized and the guidelines sentence is less than life, the trial judge may not exceed the guidelines’ recommendation absent a valid reason for doing so.... ” Brown, 530 So.2d at 53.
Throughout the many years of appeals and writs, we confess, as we did in Johnson v. State, 9 So.3d 640 (Fla. 4th DCA 2009), that we failed to perceive that a fundamental sentencing error occurred in Prince’s case. In Johnson, like this case, the court sentenced Johnson as a habitual felony offender to life in prison, not recognizing that he would receive exactly that sentence with no possibility of parole. Although we had previously denied multiple filings raising the claim, we determined that it would amount to manifest injustice not to reconsider Johnson’s sentence because of the trial court’s fundamental misunderstanding of the sentence. In this *771 case, where the court believed that he had no other option than to sentence Prince to life in prison without possibility of parole, the court fundamentally misunderstood his sentencing options.
In Stephens v. State, 974 So.2d 455 (Fla. 2d DCA 2008), the court also ordered re-sentencing in similar circumstances. There, the defendant had been sentenced to life in prison as a habitual offender in 1999. Even though the Second District affirmed the case on direct appeal, the court eight years later noted that it had overlooked the fundamental sentencing error that the trial court believed it had no discretion in imposing life as a mandatory sentence.
In Johnson we noted various factors in the record which would support a sentence significantly less than life in prison. 9 So.3d at 642. Similarly, there are aspects of this case which could support a sentence shorter than life in prison. First, it is not entirely clear from the record that the court understood that the sentence was one of life without the possibility of parole. At one point in the sentencing process, the court said: “[T]he time has now come when you’re going to have to be removed from a free society until such time that you have established to the satisfaction of the Department of corrections that you can be trusted in an unstructured[s]ociety ...(emphasis added). The court would not have suggested that Prince’s actions in prison could affect his release date if it understood that the life sentence was without the possibility of parole. Second, Prince was a very minor participant in the trafficking felony for which he was being sentenced. Third, none of his prior felonies were violent, and most appear to be related to ongoing drug dependence. The evidence of increasing seriousness of his offenses is really minimal. All these factors may convince a sentencing court that Prince’s sentence should be a term of years less than the maximum of life in prison.
As we did in Johnson, we grant the writ and direct the trial court to hold a new sentencing hearing to reconsider Prince’s sentence. The court shall appoint counsel to represent Prince in resentencing proceedings.
STEVENSON and LEVINE, JJ., concur.